

FILED
IN OPEN COURT

FEB 10 2022

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:22-CR-22 |
| v. | Count 1: Conspiracy to Commit Offenses Against the United States (18 U.S.C. § 371) |
| FAROUGH DARAKHSHAN, a/k/a Frank Darakhshan, | |
| SHOUGHI DARAKHSHAN, a/k/a Steve Darakhshan, | Counts 2 - 21: False Statements on Loan Applications (18 U.S.C. § 1014) |
| and | |
| FOUZI DARAKHSHAN, a/k/a Dave Darakhshan, | Forfeiture Notice |
| *Defendants.* | **UNDER SEAL** |

## INDICTMENT

February 2022 Term – at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

## COUNT 1

*(Conspiracy to Commit Offenses Against the United States)*

### Introductory Allegations

At all times material to this Indictment, unless otherwise specified below:

1.     Defendant FAROUGH DARAKHSHAN (hereafter "FAROUGH") resided in Great Falls, Virginia, within the Eastern District of Virginia. FAROUGH also was known as "Frank Darakhshan."

2.      Defendant SHOUGHI DARAKHSHAN (hereafter "SHOUGHI") resided in McLean, Virginia, within the Eastern District of Virginia.  SHOUGHI was also known as "Steve Darakhshan."

3.      Defendant FOUZI DARAKHSHAN (hereafter "FOUZI") resided in Falls Church and McLean, Virginia, within the Eastern District of Virginia, and after approximately July 7, 2020, also in Florida.  FOUZI was also known as "Dave Darakhshan."

4.      FAROUGH, SHOUGHI, and FOUZI are also referred to collectively as "the defendants" herein.

5.      Foad Darakhshan (hereafter "Foad"), charged elsewhere, resided in McLean, Virginia, within the Eastern District of Virginia.

6.      Haleh Farshi (hereafter "Farshi"), charged elsewhere, resided in Ashburn, Virginia, within the Eastern District of Virginia, and, at times, lived with Foad.

7.      Marcus Gharib (hereafter "Gharib"), charged elsewhere, was a friend of FAROUGH and SHOUGHI.  Gharib resided in Tysons Corner, Virginia, in the Eastern District of Virginia.

8.      FAROUGH, SHOUGHI, FOUZI, and Foad, were brothers (hereinafter collectively referred to as "the brothers"), with Foad being the oldest.  Foad and Farshi were in a romantic relationship and provided guidance and coordination to the other brothers in connection with the loan applications described below.

9.      FAROUGH, SHOUGHI, FOUZI, and Foad were in the home construction, home repair, and related business fields, and each controlled various corporations and business entities, most of which had been inactive at various times and did little to no actual business.  When the COVID-19 pandemic struck the United States and Congress made pandemic relief funds available, the defendants charged herein, and their co-conspirators, knowingly and unlawfully submitted

multiple false loan applications and supporting fraudulent documents in order to obtain money from financial institutions and the Small Business Administration.

10.     FAROUGH controlled approximately seven corporate business entities, all of which were formed and registered under the laws of the Commonwealth of Virginia, unless otherwise indicated below:

        a.     Flood Doctor Florida LLC (which was created in Florida, and FAROUGH was listed as a member of that company)

        b.     Tyco Rd LLC

        c.     Starlabs LLC

        d.     Skyfall Investments LLC

        e.     Flood Doctor Inc.

        f.     Restoration Services Inc. Construction

        g.     Restoration Doc LLC

11.     SHOUGHI controlled the following corporate business entities, which were formed and registered under the laws of the Commonwealth of Virginia:

        a.     Blue Media Inc.

        b.     Restoration Doctor LLC

12.     FOUZI controlled the following corporate business entities, which were formed and registered under the laws of the Commonwealth of Virginia:

        a.     Persica logistics llc ("Persica")

        b.     DAR Restoration Services LLC ("DAR Restoration")

13.     Foad and Farshi controlled their own business entities and submitted multiple loan applications in a similar manner, and around the same time, and in concert with the defendants charged here.

14.     Atlantic Union Bank, American Express National Bank, Fundbox (through its relationship with First Electronic Bank, a Utah chartered Industrial Bank, member FDIC), Navy Federal Credit Union, PNC Bank, TD Bank, were each a "financial institution" for purposes of 18 U.S.C. §§ 20, 1014, 1344, and 1957.

15.     The Small Business Administration ("SBA") was an agency within the United States Government that provided assistance to small businesses, including administering and financing the Economic Injury Disaster Loan ("EIDL") program. Eligible businesses seeking an EIDL could apply for such a loan directly through the SBA. The SBA also administered the Paycheck Protection Program ("PPP"), by promulgating regulations concerning eligibility for a PPP loan. Eligible businesses seeking a loan under the PPP could apply for such a loan through a federally insured depository institution.

16.     All dates indicated in this Indictment are on or about the date indicated. The submission of loans, supporting documents, signing of loan agreements, and the certifications and affirmations discussed below occurred on or about the dates indicated, and constituted continuing offenses under Title 18, United States Code, Section 3237.

### The Paycheck Protection Program

17.     In or around March 2020, in response to the economic crisis caused by the novel coronavirus pandemic, the United States Congress passed the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) ("CARES Act"). Among other things, the CARES Act made government-guaranteed loans available to qualified small businesses through the PPP. The purpose of loans issued under the PPP was to enable small businesses suffering from the economic downturn to continue to pay salary or wages to their employees.

18.     To qualify for a loan under the PPP, an applicant had to meet certain criteria, including, among other things, that it was in operation on February 15, 2020, and either had

employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on a Form 1099-MISC. Moreover, the amount of the loan that could be approved under the PPP and implementing regulations typically was a function of the applicant's historical payroll costs, consisting of compensation to its employees whose principal place of residence was the United States, subject to certain exclusions.

19.    The proceeds of a PPP loan could be used only for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, mortgage interest payments (but not mortgage prepayments or principal payments), rent payments, utility payments, interest payments on debt obligations that were incurred before February 15, 2020, or for refinancing certain specified SBA loans. The proceeds of a PPP loan were not permitted to be used to purchase automobiles, aircraft, personal residences, clothing, jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

### The Economic Injury Disaster Loan Program

20.    Also, in response to the economic crisis caused by the coronavirus pandemic, the SBA made government-guaranteed loans available to qualified small businesses through the EIDL program. The purpose of EIDLs was to enable small businesses suffering from the economic downturn to continue to meet financial obligations and operating expenses that could have been met had the pandemic not occurred.

21.    To qualify for an EIDL, an applicant had to meet certain criteria, including, among other things, that it was in operation prior to the pandemic, and had regular operating expenses, which would have been paid if not for the pandemic. Moreover, the amount of the loan that could be approved under the EIDL program typically was a function of the applicant's working capital.

22.     The proceeds of an EIDL could be used for working capital and normal operating expenses. The proceeds of an EIDL were not permitted to be used to fund the borrower's ordinary day-to-day living expenses or to invest in real estate investments on behalf of wholly unrelated businesses. It was a requirement of the EIDL program that the EIDL proceeds disbursed for the benefit of a particular company actually be used for the benefit of that company.

23.     If an EIDL loan or advance was approved, that information was wired from the SBA server in the Eastern District of Virginia to a Treasury Department server located outside of the Eastern District of Virginia.

### The Conspiracy and Its Objects

24.     From at least April 2020 and continuing through approximately December 2020, in the Eastern District of Virginia and elsewhere,

**FAROUGH DARAKHSHAN,**

**SHOUGHI DARAKHSHAN**, and

**FOUZI DARAKHSHAN,**

together with Foad, Farshi, Gharib, and others known and unknown to the Grand Jury, did knowingly conspire and agree with each other to commit the following offenses against the United States, all in violation of 18 U.S.C. § 371:

a.     *False Statements on Loan Applications* — that is, for the purpose of influencing the action of financial institutions and the Small Business Administration, in connection with loan applications, knowingly to make false statements and reports concerning revenue, payroll, number of employees, and to supply false and fictious documents in support thereof, in violation of Title 18, United States Code, Section 1014; and

6

b.     *Wire Fraud* — that is, knowingly to devise and intend to devise a scheme and artifice to defraud financial institutions, the SBA, and other lenders such as Fundbox, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343; and

c.     *Bank Fraud* — that is, to knowingly devise and intend to devise a scheme and artifice to defraud financial institutions, and to obtain and attempt to obtain by means of materially false and fraudulent pretenses, representations, and promises, moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of a financial institution, in violation of Title 18, United States Code, Section 1344.

25.     It was a purpose and object of the scheme and the conspiracy for the co-conspirators to fraudulently obtain moneys, funds, credits, assets, and other property owned by, and under the custody and control of (a) financial institutions—namely, PPP loan proceeds— and (b) the Small Business Administration through its EIDL program, through materially false pretenses, representations and promises.

### Manner and Means of the Conspiracy

In furtherance of the scheme and the conspiracy, and to accomplish the unlawful objects, the following manner and means were used, among others:

7

26.     The defendants would provide the SBA with EIDL applications in which they falsified and inflated the number of employees and gross revenues for each of their companies, thereby attempting to obtain and obtaining EIDL proceeds.

27.     The defendants would provide financial institutions with IRS Forms 940, 941, and 1040 in support of loan applications for their entities containing materially false and fraudulent representations concerning, among other items as applicable, payroll expenditures, withholding taxes, and numbers of employees, each item being grossly inflated.

28.     The defendants would falsely attest and certify to financial institutions that the IRS forms provided in connection with PPP loan applications had also been filed with the Internal Revenue Service ("IRS"), when, in fact, they had not been filed; rather, they had been fabricated and backdated for the purpose of being provided to the financial institutions.

29.     The defendants would falsely attest and certify to financial institutions on each loan that the proceeds of the PPP Loan would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments; and at least 60 percent of the proceeds of the PPP Loan would be used for payroll expenses. The defendants acknowledged that if the funds were knowingly used for unauthorized purposes, the federal government could hold them legally liable such as for charges of fraud. The defendants made these certifications and representations knowing they were false, and that they intended to use the PPP loan proceeds, at least in part, for unauthorized purposes.

30.     The defendants would falsely attest and certify to financial institutions that the information provided in the PPP Loan application and the information provided in all supporting documents and forms was true and accurate in all material respects. The defendants made these representations when, in fact, they knew that they had made numerous materially false statements in PPP loan applications and supporting documents.

31.     The defendants would use on-line portals and email and other interstate electronic communications in and affecting interstate commerce for the purpose of submitting the loan applications and supporting documents described herein.

32.     The defendants would communicate with Foad and Farshi via a WhatsApp group chat dedicated to the fraudulent EIDL and PPP loan applications, as well as in person and over the telephone, concerning the above aspects of the fraud, providing direction, support, and assistance in the execution of the scheme.  In turn, FAROUGH and SHOUGHI likewise communicated with Gharib and others about aspects of the scheme and its execution and assist Gharib and others in the preparation of additional false EIDL and PPP loan applications.

33.     The defendants would agree with Foad and Farshi that Farshi would submit EIDL applications to the SBA on their behalf, with their knowledge and approval, knowing that the representations concerning numbers of employees and revenues for their respective entities were materially false.

34.     The defendants reactivated dormant companies at the direction of Foad in order to apply for EIDL and PPP loans for those entities.  Farshi and Foad assisted the defendants in reactivating the dormant companies.

### Acts in Furtherance of the Conspiracy

In furtherance of the conspiracy, and to achieve the objects thereof, the following overt acts, among others, were committed in the Eastern District of Virginia:

*Entities Associated with FAROUGH*

*Flood Doctor Inc.*

35.     On or about April 10, 2020, FAROUGH submitted an EIDL application to the SBA on behalf of Flood Doctor Inc. ("Flood Doctor"), misrepresenting that Flood Doctor had 60 employees and $2,100,000 of gross revenue from January 31, 2019, to January 31, 2020.  In truth

and in fact, Flood Doctor, although an active entity, paid few, if any, wages to employees, and its revenues were substantially less than FAROUGH claimed to the SBA and financial institutions, as FAROUGH well knew.

36.    On or about May 5, 2020, the SBA deposited approximately $10,000.00 in FAROUGH's Eagle Bank account ending in 2693. These funds represented the EIDL advance portion of FAROUGH's fraudulent EIDL. On or about June 18, 2020, the SBA deposited approximately $149,900.00 of EIDL proceeds into FAROUGH's Eagle Bank account ending in 2693.

37.    On May 14, 2020, FAROUGH also applied to Atlantic Union Bank for a PPP loan of $837,582.50 for Flood Doctor, misrepresenting that Flood Doctor had 40 employees and $335,033 in monthly payroll expense. FAROUGH provided a fabricated IRS Form 941 for the first quarter of 2020 in support of the application, misrepresenting that Flood Doctor paid 40 employees approximately $1,005,099 in wages during the first quarter of 2020. FAROUGH also provided Atlantic Union Bank with a fabricated IRS Form 1040 for 2019, misrepresenting that Flood Doctor received approximately $1,475,902 in gross receipts in 2019.

38.    On June 18, 2020, FAROUGH applied to American Express National Bank ("AMEX") for a PPP loan of $350,000 for Flood Doctor, misrepresenting that Flood Doctor had 40 employees and $140,000 in monthly payroll expense. FAROUGH provided AMEX with a fabricated IRS Form 941 for the first quarter of 2020 in support of the application, misrepresenting that Flood Doctor paid 31 employees approximately $669,228 in wages during the first quarter of 2020. FAROUGH also provided AMEX with fabricated IRS Forms 941 for the second, third, and fourth quarter of 2019. According to these forms, Flood Doctor paid 40 employees wages of $377,886.34, $404,911.29, and $322,087.13, in the last three quarters of 2019, respectively.

39.     On or about June 23, 2020, AMEX sent approximately $350,000.00 of PPP loan proceeds via automated clearinghouse ("ACH") into FAROUGH's Eagle Bank account ending in 2693.

*Tyco Rd LLC*

40.     On or about April 15, 2020, FAROUGH submitted an EIDL application to the SBA on behalf of Tyco Rd LLC ("Tyco"), misrepresenting that Tyco had 16 employees and $255,000 of gross revenue from January 31, 2019, to January 31, 2020.  In truth and in fact, Tyco was a defunct company that did not have any employees, revenue, or wage expenses, as FAROUGH well knew.

41.     On or about June 18, 2020, the SBA deposited approximately $117,400.00 of EIDL proceeds into FAROUGH's Eagle Bank account ending in 2289.

42.     On May 14, 2020, FAROUGH also applied to Atlantic Union Bank for a PPP loan of $249,990 for Tyco, misrepresenting that Tyco had 12 employees and $99,996 in monthly payroll expenses.  FAROUGH provided a fabricated IRS Form 941 for the first quarter of 2020 in support of the application, misrepresenting to Atlantic Union Bank that Tyco paid 12 employees approximately $99,996 in wages during the first quarter of 2020.

*Starlabs LLC*

43.     On or about May 5, 2020, FAROUGH submitted and caused to be submitted an EIDL application to the SBA on behalf of Starlabs LLC ("Starlabs"), materially misrepresenting that Starlabs had 11 employees and $259,000 of gross revenue from January 31, 2019, to January 31, 2020.  In truth and in fact, Starlabs was a defunct company that did not have any employees, revenues, or wage expenses, as FAROUGH well knew.

44.     On or about June 19, 2020, the SBA deposited approximately $119,400.00 of EIDL proceeds into FAROUGH's Atlantic Union Bank account ending in 6942.

11

45.    On May 14, 2020, FAROUGH also applied to Atlantic Union Bank for a PPP loan of $229,157.50 for Starlabs, materially misrepresenting that Starlabs had 11 employees and $91,663 in monthly payroll expenses.  FAROUGH also provided a fabricated IRS Form 941 for the first quarter of 2020 in support of the application, misrepresenting that Starlabs paid 11 employees approximately $91,663 in wages during the first quarter of 2020.

*Skyfall Investments LLC*

46.    On or about May 5, 2020, FAROUGH submitted and caused to be submitted an EIDL application to the SBA on behalf of Skyfall Investments LLC ("Skyfall"), misrepresenting that Skyfall had 11 employees and $1,200,000 of gross revenue from January 31, 2019, to January 31, 2020.  In truth and in fact, Skyfall was a defunct company that did not have any employees, revenue, or wage expenses, as FAROUGH well knew.

47.    On or about June 18, 2020, the SBA deposited approximately $139,900.00 of EIDL proceeds into FAROUGH's Eagle Bank account ending in 7076.

48.    On May 14, 2020, FAROUGH also applied to Atlantic Union Bank for a PPP loan of $437,482.50 for Skyfall, misrepresenting that Skyfall had 21 employees and $174,993 in monthly payroll expenses.  FAROUGH provided a fabricated IRS Form 941 for the first quarter of 2020 in support of the application, misrepresenting that Skyfall paid 21 employees approximately $524,979 in wages during the first quarter of 2020.

*Remaining Entities Associated With FAROUGH*

49.    FAROUGH also submitted fraudulent EIDL applications to the SBA on behalf of Flood Doctor Florida LLC, Restoration Services Inc. Construction, and Restoration Doc LLC (also referred to as "Restoration Doctors LLC").  Each application contained materially inflated company revenue and false statements regarding numbers of employees, as FAROUGH well knew.

50.     FAROUGH also knowingly submitted fraudulent PPP loan applications to Atlantic Union Bank on behalf of Restoration Services Inc. Construction and Restoration Doc LLC. Those applications contained similar material misrepresentations concerning numbers of employees and payroll expenses.

### Entities Associated With SHOUGHI

### Restoration Doctor LLC

51.     On or about April 6, 2020, SHOUGHI submitted an EIDL application to the SBA on behalf of Restoration Doctor LLC ("Restoration Doctor"), misrepresenting that Restoration Doctor had 15 employees and $520,000 in gross revenue between January 31, 2019, and January 31, 2020. In truth and in fact, Restoration Doctor paid little if any employee wages and had much less revenue than SHOUGHI stated, as he well knew.

52.     On or about May 1, 2020, the SBA deposited approximately $10,000 into SHOUGHI's TD Bank account ending in 4196. This payment constituted the EIDL advance on SHOUGHI's fraudulent application. On or about June 16, 2020, the SBA deposited approximately $149,900 in EIDL proceeds into this same account.

53.     Beginning at least on or about May 4, 2020, SHOUGHI also applied to TD Bank for a PPP loan for Restoration Doctor, misrepresenting that Restoration Doctor had five employees and $41,665 in monthly payroll expense.

54.     During the PPP application process with TD Bank, SHOUGHI corresponded via email with a TD Bank employee from at least May 5, 2020, to May 13, 2020, concerning initially, SHOUGHI's providing a handwritten 2019 IRS tax document in draft form, then submission of an "official" first quarter 2020 IRS Form 941.

55.     On or about May 13, 2020, SHOUGHI sent a typed IRS Form 941 for the first quarter of 2020 for Restoration Doctor. This form misrepresented to TD Bank that Restoration

Doctor had five employees and $158,566 in wages paid for the first quarter of 2020.  In truth and in fact, SHOUGHI had never filed any such forms with the IRS, and the number of employees and supposed wages paid were both false.

56.    On or about May 14, 2020, TD Bank deposited the PPP loan proceeds of approximately $104,162 into SHOUGHI's TD Bank account ending in 4196.

57.    On or about June 12, 2020, SHOUGHI applied to Atlantic Union Bank for another PPP loan of approximately $104,162 on behalf of Restoration Doctor.  In this application, SHOUGHI represented to Atlantic Union Bank that Restoration Doctor had 5 employees and $41,665 in monthly payroll expense, which were the same false figures SHOUGHI had previously given to TD Bank.  SHOUGHI also provided Atlantic Union Bank with a fabricated IRS Form 941 for each quarter of 2019, and one for the first quarter of 2020, each of which contained false representations concerning numbers of employees and wages paid.

*Blue Media Inc.*

58.    On or about May 5, 2020, SHOUGHI submitted and caused to be submitted an EIDL application to the SBA on behalf of Blue Media Inc. ("Blue Media"), misrepresenting to the SBA that Blue Media had 12 employees and $158,000 in gross revenue between January 31, 2019, and January 31, 2020.  In truth and in fact, Blue Media was a defunct company that did not have any employees, revenue, or wage expenses, as SHOUGHI well knew.

59.    On or about June 19, 2020, the SBA deposited approximately $68,900.00 of EIDL proceeds into SHOUGHI's Atlantic Union Bank account ending in 0242.

60.    On May 14, 2020, SHOUGHI also applied to Atlantic Union Bank for a Paycheck Protection Program ("PPP") loan of $145,827.50 for Blue Media, misrepresenting that Blue Media had 7 employees and $58,331 in monthly payroll expense.  SHOUGHI provided Atlantic Union Bank with IRS Forms 941 for each quarter of 2019 and the first quarter of 2020 in support of the

application. The number of employees and the quarterly wages paid according to these forms are shown in the chart below:

| Document | Number of Employees | Wages Paid |
|---|---|---|
| Q1 2019 941 | 19 | $198,642 |
| Q2 2019 941 | 21 | $201,567 |
| Q3 2019 941 | 22 | $229,311 |
| Q4 2019 941 | 25 | $206,163 |
| Q1 2020 941 | 24 | $199,642 |

Each of these documents was fabricated and the employees and wages paid represented on them were materially false, as SHOUGHI well knew.

61.     On May 28, 2020, SHOUGHI applied to Fundbox for another PPP loan of $450,000 on behalf of Blue Media. SHOUGHI later reduced the requested loan amount to $170,883. In this application, SHOUGHI falsely stated that Blue Media had 26 employees and an average monthly payroll expense of $193,842. In support of the application, SHOUGHI also submitted fabricated IRS Forms 941 for 2019 and for the first quarter of 2020, with material misrepresentations concerning wages paid and numbers of employees.

*Entities Associated With FOUZI*

*DAR Restoration Services LLC*

62.     On or about April 6, 2020, FOUZI submitted an EIDL application to the SBA on behalf of DAR Restoration Services LLC ("DAR Restoration"), misrepresenting to the SBA that it had 15 employees and $519,000 of gross revenue in 2019. In truth and in fact, DAR Restoration was a defunct company that did not have any employees, revenues, or wage expenses, as FOUZI well knew.

63.     On or about May 14, 2020, FOUZI applied to Atlantic Union Bank for a PPP loan on behalf of DAR Restoration, misrepresenting that it had 25 employees and $208,325.00 in average monthly payroll expense. FOUZI provided Atlantic Union Bank with a fabricated IRS Form 941 for the first quarter of 2020 in support of the application, which falsely indicated that

DAR Restoration paid 25 employees approximately $624,975.00 in wages during the first quarter of 2020. FOUZI also provided Atlantic Union Bank with a fabricated IRS Form 940 for 2019 in support of the PPP loan application. With this form, FOUZI falsely represented to Atlantic Union Bank that, in 2019, DAR Restoration paid its employees approximately $1,958,500.00 in wages.

64.    Between June 22, 2020, and July 7, 2020, FOUZI also applied to Navy Federal Credit Union ("NFCU") for a PPP loan for DAR Restoration. In this application, FOUZI misrepresented to NFCU that DAR Restoration had 16 employees and $60,414.58 in monthly payroll expense. FOUZI provided NFCU with a fabricated IRS Form 941 for the first quarter of 2020 in support of the application, which falsely represented that DAR Restoration paid 16 employees approximately $181,243.75 in wages during the first quarter of 2020. FOUZI also provided NFCU with a fabricated IRS Form 940 for 2019 in support of the application, falsely representing that, in 2019, DAR Restoration paid its employees approximately $724,975.00 in wages.

65.    FOUZI also provided NFCU with a document entitled, "2019 Payroll Summary.pdf." This document was a portable document format ("PDF") version of a Microsoft Excel spreadsheet, which contained a list of 16 redacted social security numbers and purported salaries associated with each social security number. FOUZI provided this document to NFCU as supporting documentation associated with the quarterly payroll expense FOUZI had claimed on his PPP application. In truth and in fact, this document was fabricated, and its contents were false.

66.    On or about July 7, 2020, NFCU deposited the PPP loan proceeds of approximately $151,000 into FOUZI's NFCU account ending in 8752.

### Persica logistics llc

67.    On or about May 5, 2020, FOUZI submitted and caused to be submitted an EIDL application to the SBA on behalf of Persica logistics llc ("Persica"), misrepresenting that Persica

had 12 employees and $267,000 of gross revenue in 2019. In truth and in fact, Persica was a defunct company that did not have any employees, revenue, or wage expenses, as FOUZI well knew.

68.    On May 14, 2020, FOUZI also applied to Atlantic Union Bank for a PPP loan of $229,157 for Persica, misrepresenting that Persica had 11 employees and $91,663 in monthly payroll expense. FOUZI provided a fabricated IRS Form 941 for the first quarter of 2020 in support of the application, misrepresenting to Atlantic Union Bank that Persica paid 11 employees approximately $274,989 in wages during the first quarter of 2020. FOUZI also provided Atlantic Union Bank with an IRS Form 940 for 2019 in support of the PPP loan application, misrepresenting to Atlantic Union Bank that, in 2019, Persica paid its employees approximately $874,340 in wages.

<em>Other Acts in Furtherance of the Conspiracy</em>

69.    After SHOUGHI had success with a fraudulent loan application, SHOUGHI assisted Gharib and Individual K.J., respectively, in submitting their own fraudulent PPP loan applications, using the same manner and means described above to defraud and attempt to defraud financial institutions. SHOUGHI submitted Gharib's loan application to the lender with Gharib's knowledge and approval, well knowing that the representations contained therein were false.

70.    From approximately April 2020 through at least October 2020, SHOUGHI participated in a group WhatsApp chat with his brothers and Farshi. While participating in this chat, SHOUGHI sent several messages to the group by which SHOUGHI informed the group that he had facilitated Individual K.J.'s PPP fraudulent loan application.

71.    FAROUGH also assisted Gharib with a fraudulent loan application for Gharib's shell entity. From at least June 9, 2020, to at least June 15, 2020, FAROUGH and Gharib exchanged messages via the application WhatsApp regarding Gharib's fraudulent loan. During

these conversations, FAROUGH coached Gharib through the process of applying for a fraudulent

loan.  In a voice message, FAROUGH also instructed Gharib just to make up numbers to put on

IRS forms to submit to the lender.

72.    In and around 2020, the conspirators used loans proceeds for items unrelated to

employee payroll, such as personal expenses, the acquisition of vehicles, investments, and travel.

(All in violation of Title 18, United States Code, Section 371.)

## COUNTS 2 - 10

*(False Statements on Loan Applications)*

THE GRAND JURY FURTHER CHARGES THAT:

     67.    The allegations set forth in paragraphs 1 - 23 and paragraphs 25 - 72 of Count One of this Indictment are realleged and incorporated as if set forth herein.

     68.    On or about the dates indicated in the table below, in the Eastern District of Virginia and elsewhere, the defendant,

### FAROUGH DARAKHSHAN,

for the purpose of influencing the action of financial institutions and the Small Business Administration, in connection with applications for EIDL and PPP loans, knowingly made false statements and reports, in that the defendant, and others aiding and abetting him: (a) overstated annual and quarterly company employee payroll wages paid; (b) overstated annual and quarterly company revenue; (c) overstated the number of employees each company had paid; and (d) provided false, fictitious, and backdated IRS Forms 940 and 941, as further described below:

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| *Flood Doctor Inc.* | | |
| 2 | 4/10/2020 | EIDL application to the SBA for Flood Doctor Inc., falsely representing number of employees and gross revenue. |
| 3 | 5/14/2020 | PPP loan application to Atlantic Union Bank for Flood Doctor Inc., falsely representing number of employees, payroll expenses, and submission of fabricated and false IRS Forms 941 and 1040. |
| 4 | 6/18/2020 | PPP loan application to American Express National Bank for Flood Doctor Inc., falsely representing number of employees, payroll expenses, and submission of fabricated and false IRS Forms 941. |

| | | |
|---|---|---|
| *Tyco Rd. LLC* | | |
| 5 | 4/15/2020 | EIDL application to the SBA for Tyco Rd. LLC, falsely representing number of employees and gross revenue. |
| 6 | 5/14/2020 | PPP loan application to Atlantic Union Bank for Tyco Rd. LLC, falsely representing number of employees, payroll expenses, and submission of fabricated and false IRS Form 941. |
| *Starlabs LLC* | | |
| 7 | 5/5/2020 | EIDL application to the SBA for Starlabs LLC, falsely representing number of employees and gross revenue. |
| 8 | 5/14/2020 | PPP loan application to Atlantic Union Bank for Starlabs LLC, falsely representing number of employees, payroll expenses, and submission of fabricated and false IRS Form 941. |
| *Skyfall Investments LLC* | | |
| 9 | 5/5/2020 | EIDL application to the SBA for Skyfall Investments LLC, falsely representing number of employees and gross revenue. |
| 10 | 5/14/2020 | PPP loan application for Skyfall Investments LLC, falsely representing number of employees, payroll expenses, and submission of fabricated and false IRS Form 941. |

(All in violation of Title 18, United States Code, Sections 1014 and 2.)

## COUNTS 11 - 16

*(False Statements on Loan Applications)*

THE GRAND JURY FURTHER CHARGES THAT:

69.    The allegations set forth in paragraphs 1 - 23 and paragraphs 25 - 72 of Count One of this Indictment are realleged and incorporated as if set forth herein.

70.    On or about the dates indicated in the table below, in the Eastern District of Virginia and elsewhere, the defendant,

### SHOUGHI DARAKHSHAN,

for the purpose of influencing the action of financial institutions and the Small Business Administration, in connection with applications for EIDL and PPP loans, knowingly made false statements and reports, in that the defendant, and others aiding and abetting him: (a) overstated annual and quarterly company employee payroll wages paid; (b) overstated annual and quarterly company revenue; (c) overstated the number of employees each company had paid; and (d) provided false, fictitious, and backdated IRS Forms 940 and 941, as further described below:

| COUNT | DATE | DESCRIPTION |
|-------|------|-------------|
| | | *Restoration Doctor LLC* |
| 11 | 4/6/2020 | EIDL application to the SBA for Restoration Doctor LLC, falsely representing number of employees and gross revenue. |
| 12 | 5/13/2020 | PPP loan application to TD Bank for Restoration Doctor LLC, falsely representing number of employees, payroll expenses, and submission of fabricated and false IRS Form 941. |
| 13 | 6/12/2020 | PPP loan application to Atlantic Union Bank for Restoration Doctor LLC, falsely representing number of employees, payroll expenses, and submission of fabricated and false IRS Forms 941. |

| Blue Media Inc. | | | |
|---|---|---|
| 14 | 5/5/2020 | EIDL application to the SBA for Blue Media Inc., falsely representing number of employees and gross revenue. |
| 15 | 5/14/2020 | PPP loan application to Atlantic Union Bank for Blue Media Inc., falsely representing number of employees, payroll expenses, and submission of fabricated and false IRS Forms 941. |
| 16 | 5/28/2020 | PPP loan application to Fundbox for Blue Media Inc., falsely representing number of employees, payroll expenses, and submission of fabricated and false IRS Forms 941. |

(All in Violation of Title 18, United States Code, Sections 1014 and 2.)

## COUNTS 17 - 21

*(False Statements on Loan Applications)*

THE GRAND JURY FURTHER CHARGES THAT:

71.     The allegations set forth in paragraphs 1 - 23 and paragraphs 25 - 72 of Count One of this Indictment are realleged and incorporated as if set forth herein.

72.     On or about the dates indicated in the table below, in the Eastern District of Virginia and elsewhere, the defendant,

### FOUZI DARAKHSHAN,

for the purpose of influencing the action of financial institutions and the Small Business Administration, in connection with applications for EIDL and PPP loans, knowingly made false statements and reports, in that the defendant, and others aiding and abetting him: (a) overstated annual and quarterly company employee payroll wages paid; (b) overstated annual and quarterly company revenue; (c) overstated the number of employees each company had paid; and (d) provided false, fictitious, and backdated IRS Forms 940 and 941, as described below:

| COUNT | DATE | DESCRIPTION |
|-------|------|-------------|
| *DAR Restoration Services LLC* | | |
| 17 | 4/6/2020 | EIDL application to the SBA for DAR Restoration Services LLC, falsely representing number of employees and gross revenue. |
| 18 | 5/14/2020 | PPP loan application to Atlantic Union Bank for DAR Restoration Services LLC, falsely representing number of employees, payroll expenses, and submission of fabricated and false IRS Forms 940 and 941. |
| 19 | 7/7/2020 | PPP loan application to Navy Federal Credit Union for DAR Restoration Services LLC, falsely representing number of employees, payroll expenses, and submission of fabricated and false IRS Forms 940 and 941, and submission of "2019 Payroll Summary.pdf" document falsely listing employee payroll information. |

| *Persica logistics llc* | | |
|---|---|---|
| 20 | 5/5/2020 | EIDL application for Persica logistics llc, falsely representing number of employees and gross revenue. |
| 21 | 5/14/2020 | PPP loan application for Persica logistics llc, falsely representing number of employees, payroll expenses, and submission of fabricated and false IRS Forms 940 and 941. |

(All in Violation of Title 18, United States Code, Sections 1014 and 2.)

**FORFEITURE NOTICE**

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT THE PROPERTY DESCRIBED BELOW IS SUBJECT TO FORFEITURE:

Pursuant to Federal Rule of Criminal Procedure 32.2(a), the defendants FAROUGH DARAKHSHAN, SHOUGHI DARAKHSHAN, and FOUZI DARAKHSHAN, are hereby notified that, if convicted of an offense alleged in Counts 1 of this Indictment, the defendants shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property real or personal, which constitutes or is derived from proceeds traceable to the offense.

Pursuant to Federal Rule of Criminal Procedure 32.2(a), the defendants FAROUGH DARAKHSHAN, SHOUGHI DARAKHSHAN, and FOUZI DARAKHSHAN, are hereby notified that, if convicted of an offense alleged in Counts 1 through 21 of this Indictment, the defendants shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds the person obtained directly or indirectly, as a result of the violation.

The property subject to forfeiture includes, but is not limited to, the following: sum of money equal to at least $1,370,562.00 representing the amount of proceeds obtained as a result of the scheme and conspiracy alleged in the Indictment.

If any property that is subject to forfeiture above, as a result of any act or omission of the defendant, (a) cannot be located upon the exercise of due diligence, (b) has been transferred to, sold to, or deposited with a third party, (c) has been placed beyond the jurisdiction of the Court, (d) has been substantially diminished in value, or (e) has been commingled with other property that cannot be divided without difficulty, it is the intention of the United States to seek forfeiture

of any other property of the defendant, as subject to forfeiture under Title 21, United States Code,

Section 853(p).

(In accordance with Title 18, United States Code, Sections 982(a)(2)(A) and 981(a)(1)(C);
Title 28, United States Code, Section 2461(c); Title 21, United States Code, Section 853(p);
and Rule 32.2(a), Federal Rules of Criminal Procedure.)

A TRUE BILL

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office.

FOREPERSON OF THE GRAND JURY

Jessica D. Aber
United States Attorney

By:

Russell L. Carlberg
Assistant United States Attorney